21-mj-7186-JCB

# AFFIDAVIT OF SPECIAL AGENT MICHAEL D. LITTLE III IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Michael D. Little III, being sworn, state as follows:

## INTRODUCTION

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since January 2019. I have been assigned to the Metro Boston Gang Task Force ("MBGTF") of the FBI's Boston Division, where I conduct complex criminal enterprise investigations against violent criminals involved in a myriad of criminal activities to include the illegal distribution of narcotics, firearms trafficking, and associated violent crimes. Prior to joining FBI, I spent five years as a police officer with the Metropolitan Police Department of Washington, D.C., where I worked as an undercover officer and vice investigator. I conducted numerous drug investigations targeting violent criminals and received training on how to conduct drug investigations.

2. In the course of participating in investigations as it relates to drug trafficking, I have conducted or participated in surveillance; the controlled purchase of illegal drugs; the execution of search warrants; debriefings of subjects, witnesses, and informants; wiretaps; and reviews of consensually recorded conversations and meetings. I have also received training through my position as an FBI Special Agent involving narcotics trafficking. Through my training, education, and experience, I have become familiar with the manner in which drug traffickers conduct their illegal drug trafficking activity, to include their use of cellular telephones to contact drug customers, drug runners, drug associates, and sources of illegal drug supply. I am familiar with narcotics traffickers' methods of operation, including distribution, storage, and transportation of narcotics.

1

3.  Based on my training and experience as a Special Agent, I am familiar with federal narcotics laws. I know that it is a violation of Title 21 U.S.C. § 841(a)(1), for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. I know that it is a violation of 21 U.S.C. § 846, for any person to conspire to violate the drug laws.

## PURPOSE OF AFFIDAVIT

4.  I submit this affidavit in support of a Criminal Complaint charging Anthony HOWARD ("HOWARD"), DOB: xx/xx/1986, with violating Title 21 U.S.C. § 841(a)(1) (possessing with intent to distribute, and distributing, heroin).

5.  I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by agents of the FBI and other federal, state and local law enforcement agencies.

6.  I submit this affidavit for the limited purpose of establishing probable cause to believe HOWARD has committed the above offense. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

## THE INVESTIGATION

I.  **BACKGROUND**

7.  The Federal Bureau of Investigation ("FBI") and the Boston Police Department ("BPD") are investigating a drug trafficking operation ("DTO") involving HOWARD, who is known by investigators to be a Greenwood Street gang associate. HOWARD is also selling heroin, amongst other narcotics, in the Boston area, since at least as early as July, 2021. Since July of

2021, HOWARD has met with an FBI cooperating witness ("CW-1") [1] at predetermined locations, on multiple occasions, where he has sold narcotics to CW-1. During this investigation, investigators reviewed CW-1's consensually recorded controlled purchases of controlled substances from HOWARD. Recordings in connection with these transactions include recorded telephone calls between HOWARD and CW-1, as well as audio/video recordings of the controlled purchases.

8. HOWARD uses the telephone number, ending in -5672 (the "TARGET PHONE - 1") when communicating with CW-1 during the course of this investigation.

9. I am also aware, based in part on a records check of the Massachusetts Board of Probation ("BOP") and Interstate Identification Index ("III"), that HOWARD has numerous prior entries on his criminal history, including arrests and convictions for various types of drug distribution, firearm possession and acts of violence, including shootings, in Massachusetts.

10. HOWARD is currently on conditions of pre-trial release in Massachusetts, including house arrest at TARGET LOCATION – 1 [2], for a 2014 indictment for murder, armed assault to murder, and illegal firearm possession, amongst other charges. That case involves the shooting of multiple victims, including an individual who died as a result of her injuries.

---

[1] CW-1 has a criminal history that includes prior arrests for assault and battery with a dangerous weapon, breaking and entering, and distribution of Class A. On previous occasions, CW-1 has accurately identified, and corroborated events and individuals involved in active criminal investigations, including drug and firearm investigations. CW-1's information has led to previous search warrants, arrests and seizures related to drugs and firearms. At the direction of law enforcement, the CW-1 has conducted controlled purchases of evidence in conjunction with criminal investigations. CW-1's cooperation is financially motivated and CW-1 is being paid for his/her services and information provided. Based on the corroboration, including recordings, I believe that CW-1's information is reliable.

[2] I am aware that TARGET LOCATION – 1 is HOWARD's residential address in Boston, MA. I am not including that specific address for the purpose of this affidavit in support of a criminal complaint.

## II.  CONTROLLED PURCHASE FROM HOWARD ON JULY 20, 2021

11.     On July 20, 2021, HOWARD communicated with CW-1 through a series of phone calls, during which HOWARD agreed to sell 4 "fingers" (each "finger" being approximately 10 grams of fentanyl) for $600 to CW-1.  During these initial communications, law enforcement officers observed CW-1 dialing the TARGET PHONE - 1, which CW-1 has come to learn is utilized by HOWARD and was used during these calls.  During the communications with HOWARD, CW-1 also received directions on where to park for the sale, in the vicinity of TARGET LOCATION – 1.

12.     Following the series of communications between HOWARD and CW-1, law enforcement officers followed a set of procedures whereby they searched CW-1 and his/her vehicle for contraband and money with negative results.  Law enforcement officers provided CW-1 with an agreed-upon amount of official agency funds ("OAF") to complete the drug purchase.  CW-1 was also provided with an audio/video recording device and a transmitter, which recorded the controlled purchase.  Law enforcement officers then instructed CW-1 to meet with HOWARD and make the drug purchase, and subsequently surveilled CW-1 to the pre-arranged meeting location in the vicinity of TARGET LOCATION – 1 in Boston, MA.

13.     Agents, while monitoring the controlled purchase via the transmitter, observed that CW-1 met with HOWARD after being directed to park in front of the driveway at TARGET LOCATION -1.  HOWARD exited the basement door of TARGET LOCATION – 1 and walked to the passenger's side door of CW-1's vehicle.  HOWARD and CW-1 engaged in a brief conversation, during which HOWARD and CW-1 conducted an exchange. After the exchange, HOWARD was observed by law enforcement officers walk directly from CW-1's vehicle back into the basement of TARGET LOCATION – 1.  CW-1 then left the area.

14. After CW-1 left TARGET LOCATION – 1, law enforcement officers surveilled CW-1 as he/she left the meeting location, and then met with CW-1 at a predetermined location for a debriefing. At this point, CW-1 provided law enforcement officers with a clear plastic bag containing a beige powder substance. Law enforcement officers then searched CW-1 and his/her vehicle again, with negative results. During the debriefing, CW-1 told agents that following the communications with HOWARD, CW-1 met with HOWARD where he/she purchased the suspected narcotics in exchange for the OAF.

15. CW-1 stated that when he/she arrived in the vicinity of TARGET LOCATION – 1, HOWARD told CW-1 that he would be right back and entered the basement door of TARGET LOCATION – 1. Moments later, HOWARD exited the basement and approached CW-1's vehicle. CW-1 gave HOWARD the OAF and HOWARD gave CW-1 a clear plastic bag containing a "ball" of suspected narcotics.

16. During this exchange, HOWARD directed CW-1 to hide the product in his/her pants and HOWARD then told CW-1 that he/she should never bring anyone else when they meet up. HOWARD went on to state words to the effect of "if you ever get grabbed (arrested), never give me up…I'll come get you (and post your bail)."

17. The suspected narcotics were entered in the FBI-Boston Evidence Control Room and subsequently sent to the DEA Laboratory, which found that the beige powder substance was found to contain Heroin, and the net weight was 32.006 grams.

## CONCLUSION

18.     Based on the foregoing, there is probable cause to believe that on July 20, 2021, HOWARD did knowingly and intentionally possess with intent to distribute, and distribute, heroin, in violation of Title 21, United States Code, Section 841(a)(1).

I declare the foregoing is true and correct.

_____
Michael D. Little, III
SPECIAL AGENT, FBI

The affiant appeared before me on this date, by telephonic conference or other reliable electronic means, pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Subscribed and sworn to on
this __4__ day of August, 2021.

_____
HONORABLE JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS